OPINION *Page 2 
{¶ 1} Appellant Kittrell Leroy Matthews appeals from his conviction for felonious assault in the Stark County Court of Common Pleas. The relevant facts leading to this appeal are as follows.
 {¶ 2} On March 1, 2007, appellant and his girlfriend, Sheena Jackson, were in the process of moving out of a residence on 609 Rowland Avenue NE, in Canton. The residence was owned by the uncle of Shalamar Taylor, the assault victim in this case. Taylor, who is Sheena Jackson's brother, also resided there. Taylor's uncle planned to move back into his house, which apparently had created some hostility between appellant and Taylor. That evening, while appellant waited for a ride, a physical altercation broke out between appellant and Taylor. As a result, Taylor was rendered unconscious and required four days of hospitalization.
 {¶ 3} On April 23, 2007, the Stark County Grand Jury indicted appellant on one count of felonious assault. Appellant pled not guilty. The matter proceeded to a jury trial on May 21-22, 2007, at which time defense counsel argued that appellant was trying to defend himself against a potential knife attack during the incident on March 1, 2007. Tr. at 86-87. However, the jury found appellant guilty as charged.
 {¶ 4} On May 31, 2007, the court sentenced appellant to three years in prison.
 {¶ 5} Appellant filed a notice of appeal on June 29, 2007. He herein raises the following sole Assignment of Error:
 {¶ 6} "I. THE JURY VERDICT FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE *Page 3 
EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I. {¶ 7} In his sole Assignment of Error, appellant contends his felonious assault conviction was against the manifest weight of the evidence. We disagree.
 {¶ 8} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 9} The statute under which appellant herein was indicted, R.C. 2903.11(A)(1), provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * [.]" In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.State v. Howard, Ross App. No. 07CA2948, 2007-Ohio-6331, ¶ 12, citingState v. Williford (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279. The defendant must prove these three elements of *Page 4 
self-defense by a preponderance of the evidence. Id., citingWilliford at 249, 551 N.E.2d 1279.
 {¶ 10} The record in the case sub judice reveals the following evidence presented to the jury. The State first called Canton Police Detective Don King. He testified that he went to the hospital and observed the unconscious victim, who had severe facial wounds and appeared to have been "beaten pretty badly." Tr. at 10. King continued his investigation, although the victim was subsequently unable to recall the altercation of March 1, 2007. King nonetheless learned that appellant called 911 on his cell phone at 7:02 PM on the evening of the fight, then called Brandy Ingram, the victim's cousin, at 7:10 PM, and then called Ronald Diggs, who was acquainted with the victim, at 7:13 PM. Tr. at 15-16.
 {¶ 11} Brandy Ingram, the victim's cousin, testified that she had been visiting at the Rowland Avenue residence on the afternoon of March 1, 2007. Ingram left the residence between 6:00 and 7:00 PM. Tr. at 22. She later received a cell phone call from a female who was planning to give appellant a ride in her car, wanting to know if he was coming out or not. Ingram, who lived across the street from 609 Rowland, ran over to check on appellant, who by that time was quickly leaving with his ride. Ingram later reached appellant by cell phone, at which time appellant told her he was tired of the victim talking to him "like [he's] young and stuff like that." Tr. at 24. Appellant then told her he beat up Taylor and "put him to sleep." Id. According to Ingram, appellant called back later and said: "[T]ell your cousin that if he send (sic) anybody after me that he was going to kill him." Id. *Page 5 
 {¶ 12} Ronald Diggs, who had been dating the victim's aunt, also took the stand. He recalled his phone conversation with appellant following the altercation, at which time appellant bragged: "I just beat Shalamar's ass and I just put him to bed and I mean I just put him to bed, I knocked him out." Tr. at 31. Diggs then proceeded to the Rowland Avenue residence, where he found the semi-conscious victim.
 {¶ 13} Finally, Shalamar Taylor himself testified for the State. Although he could not recall the fight, he denied being high on marihuana at the time. Tr. at 42. No questions were posed by either side to Taylor as to his alleged brandishing of a knife.
 {¶ 14} The jury also heard from the sole defense witness, Anaisha McNeal, a long-time friend of appellant, who testified she was the person who gave appellant a ride after the fight. She stated she had been able to see the events through the back screen door, after she had stepped outside. According to McNeal, Taylor was wielding a knife at appellant before the physical fight ensued: "[Taylor] just had it like he was going to point it there like he was going to stab him. I don't know if he actually cut him or anything, but I seen him like, like he really was going to hit him with it, but then after that they ended up getting into a fight." Tr. at 50-51.
 {¶ 15} Appellant presently emphasizes the evidence that the victim had no recollection of the fight, and that appellant called 911 immediately after the incident, making no attempt to flee or conceal the altercation. Appellant argues that any subsequent statements he made about beating the victim or "putting him to sleep" do not necessarily infer that appellant was the instigator of the fight. Appellant also points out that the only eyewitness to the fight, Anaisha McNeal, testified that she saw the victim pointing a knife at appellant. However, we observe that in neither of the *Page 6 
conversations appellant had with Ingram and Diggs did he make any reference to defending against a knife attack; Ingram instead testified that appellant told her he beat up Taylor apparently because he was tired of being treated like a child. Upon review of the record, we are unpersuaded that the jury's verdict led to a manifest miscarriage of justice. We therefore hold the jury's verdict was not against the manifest weight of the evidence.
 {¶ 16} Appellant's sole Assignment of Error is overruled.
 {¶ 17} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J. Gwin, P. J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Costs assessed to appellant. *Page 1